1 | SETH M. GOLDSTEIN (SBN 232071)
2 | sgoldstein@constangy.com
  | **CONSTANGY, BROOKS, SMITH**
3 | **& PROPHETE LLP**
4 | 2029 Century Park East, Suite 1100
  | Los Angeles, California 90067
5 | Tel: 310.909.7775 | Fax: 424.465.6630
6 |
7 | Attorneys for Defendant
  | UNIO HEALTH CARE PARTNERS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| EMILIE HANNE, on behalf of all others similarly situated, | Case No. **'24CV0961 BEN DDL** |
|---|---|
| Plaintiff, | [Removed from San Diego County Superior Court, Case No. 37-2024-00019901-CU-OE-CTL] |
| v. | |
| UNIO HEALTH CARE PARTNERS, LLC and DOES 1 through 50, inclusive, | **DEFENDANT UNIO HEALTH CARE PARTNERS, LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, AND 1446** |
| Defendants. | Removal Date:     May 31, 2024<br>Complaint Filed:  April 25, 2024 |

DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, and 1446, Defendant Unio Health Care Partners, LLC ("Unio" or "Defendant") hereby removes the above-titled action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. This Court has original federal jurisdiction over this action based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d). In support of such removal, Defendant states the following:

**I.   SUMMARY**

1. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all state court "process, pleadings, and orders" are attached as **Exhibits A** through **F**. These documents are as follows: (1) **Exhibit A**: Complaint filed in the aforementioned action against Defendant in the Superior Court of California, County of San Diego, titled *Emilie Hanne v. Unio Health Care Partners, LLC*, Case No. 37-2024-00019901-CU-OE-CTL, on April 25, 2024; (2) **Exhibit B**: Civil Case Cover Sheet filed on April 25, 2024; (3) **Exhibit C**: Original Summons issued on April 25, 2023; (4) **Exhibit D:** Notice of Case Assignment issued on April 30, 2024; (5) **Exhibit E**: Plaintiff's Proof of Service of 30-Day Summons and Complaint filed on May 1, 2024 indicating Plaintiff served the Complaint on Defendant on May 1, 2024; and (6) **Exhibit F**: the San Diego County Superior Court's electronic docket and register of actions for this matter, current through May 31, 2024.

**TIMELINESS OF REMOVAL**

2. On April 25, 2024, Plaintiff Emilie Hanne ("Plaintiff") commenced the aforementioned lawsuit against Unio by filing a Complaint in the Superior Court of California for the County of San Diego titled *Emilie Hanne v. Unio Health Care Partners, LLC*, Case No. 37-2024-00019901-CU-OE-CTL (the "State Court

Action"). (Ex. A.) Plaintiff served Defendant with notice of this action via personal service on May 1, 2024. (Ex. E.)

3. This Notice of Removal is timely filed within 30 days of service of process on Defendant, which occurred on May 1, 2024. *See* 28 U.S.C. §§ 1446(b)(1), 1453(b).

**VENUE**

4. Venue is proper in this District, pursuant to 28 U.S.C. §§ 84(b), and 1441(a) and 1446(a), because the State Court Action was pending in the San Diego County Superior Court, which is within the territory of the United State District Court for the Southern District of California.

**NOTICE TO STATE COURT**

5. Defendant will serve written notice of the filing of this Notice of Removal to Plaintiff as required by 28 U.S.C. § 1446(d) and will file this Notice of Removal with the clerk of the Superior Court of the State of California in and for the County of San Diego, as further required by that statute.

**II.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

6. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d)(2). The district court has original jurisdiction over the action because the action is a class action in which at least one class member is a citizen of a state different from that of the Defendant, the purported class size is in excess of 100 members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(4), (d)(5)(B), and (d)(6). Therefore, the action is properly removable pursuant to 28 U.S.C. § 1441(a).

**THIS MATTER WAS BROUGHT AS A CLASS ACTION**

7. Plaintiff brings this case as a class action. Plaintiff's Complaint asserts the following ten causes of action on behalf of himself and all current and former non-exempt employees who worked for Defendant in California at any time from four

years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification: (1) Violation of California Labor Code §§ 1194, 1194.2 and 1198 (Minimum Wage Violations) (Ex. A at ¶¶ 30-33), (2) Violation of California Labor Code §§ 510 and 1194 (Failure to Pay All Overtime Wages) (*id.* at ¶¶ 34-37), (3) Violation of California Labor Code §§ 226.7 and 512(a) (Meal Period Violations) (*id.* at ¶¶ 38-42), (4) Violation of California Labor Code §§ 226.7 and 516 (Rest Period Violations) (*id.* at ¶¶ 43-46), (5) Violation of California Labor Code §§ 200, 218, 246 *et seq.* (Failure to Pay All Paid Sick Leave Wages) (*id.* at ¶¶ 47-57), (6) Violation of California Labor Code §§ 204, 210, 218 (Untimely Payment of Wages) (*id.* at ¶¶ 58-61), (7) Violation of California Labor Code § 226 (Wage Statement Violations) (*id.* at ¶¶ 62-66), (8) Violation of California Labor Code §§ 201 *et seq.* (Waiting Time Penalties) (*id.* at ¶¶ 67-70); (9) Violation of California Labor Code § 2802 (Failure to Reimburse Business Expenses) (*id.* at ¶¶ 71-73), and (10) Violation of California Business & Professions Code §§ 17200, *et seq.* (*id.* at ¶¶ 74-79).

8. Plaintiff seeks damages on behalf of herself and members of the Putative Class ("Putative Class Members"), including unpaid wages and unpaid overtime, premium pay for meal and rest period violations, and damages for the reimbursement for necessary business expenses. (Complaint at Prayer for Relief.) Plaintiff further claims that he and the Putative Class Members are entitled to liquidated damages and a number of statutory penalties. (*Id.*) Plaintiff also seeks injunctive relief, restitution, interest, and attorneys' fees and costs. (*Id.*)

**THE NUMBER OF PUTATIVE CLASS MEMBERS IS 100 OR GREATER**

9. Plaintiff's Complaint alleges that the membership of the Putative Class "is estimated to exceed 50 individuals . . ." (Complaint ¶ 20.) Defendant's records reflect that the size of the Putative Class during the Putative Class Period is approximately **936** employees.

**AT LEAST ONE MEMBER OF THE PUTATIVE CLASS IS A CITIZEN OF A STATE DIFFERENT THAN DEFENDANT**

10. **Members of the Putative Class.** For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). According to Defendant's records, some of the Putative Class Members are citizens of states other than California because, after working for Unio in California, they relocated to other states (including Arkansas, Arizona, Connecticut, Delaware, Florida, Georgia, Iowa, Maryland, New Jersey, New Mexico, Nevada, Oregon, Texas, Virginia, Washington and Wisconsin).

11. **Defendant Unio's Citizenship**. Defendant is and was at the time of the institution of this civil action, a limited liability company organized under the laws of the State of California, meaning it is "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Defendant is thus a citizen of the states of California and Delaware.

12. **Doe Defendants' Citizenship**. Plaintiff has named as defendants "DOES 1 through 50." Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join removal petition). Indeed, federal courts, unlike California state courts, do not recognize the existence of Doe defendants. *See, e.g.*, *Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). The existence of Doe defendants 1 through 100, therefore, does not deprive this Court of jurisdiction. Further, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

13. Because at least one member of the Putative Class is a citizen of a state different than Defendant, the minimal diversity requirement of 28 U.S.C. § 1332(2)(A) is met.

**THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,0.00**

14. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000, either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case…' Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

15. When the amount in controversy is not apparent from the face of the Complaint, a defendant may state underlying facts supporting its assertion that the amount-in-controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). The court may also consider facts in the removal petition and may "require parties to submit summary-judgment type evidence relevant to the amount in controversY." *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117

1   (C.D. Cal. 2010), quoting *Singer v. State Farm Mutual Ins.*, 116 F.3d 373, 377 (9th
2   Cir. 1997); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

3      16.   Under this approach, and assuming *arguendo* that Plaintiff obtains class certification (which Defendant believes she will not), the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000. The Complaint alleges a Putative Class that consists of "all current and former non-exempt employees who worked for Defendant in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification." (Complaint ¶ 18.) Accordingly, Plaintiff's alleged putative class consists of all of Defendant's non-exempt employees employed in the State of California between October 30, 2019, and the present (the "Putative Class Period").

   17.   The Complaint fails to allege an amount in controversy for the putative class members, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable. (*See generally* Complaint.) However, Defendant has conducted its own investigation and review of its employment and payroll records. (Jeffcoat Decl. ¶ 4.) Based on this review, it is clear that this action is properly removable under the Class Action Fairness Act because the statute's amount-in-controversy requirement is met. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove [a CAFA action] . . . on the basis of its own information . . . A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained . . . [b]ut neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on his own.")

   18.   Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional

amount in controversy requirement is met. *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *citing Korn v. Polo Ralph Lauren, Inc.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000).

19.  In her Complaint, Plaintiff seeks, among other things, declaratory judgment, injunctive relief, restitution, liquidated damages, unpaid wages (minimum, overtime and sick), premium pay for missed meal and rest periods, wage statement penalties, waiting time penalties, untimely wage payment penalties, reimbursements for business-related expenses, and pre-judgment and post-judgment interest, attorneys' fees, and costs. (Complaint at Prayer for Relief.) Defendant denies that Plaintiff is entitled to take anything by way of the Complaint, either on her own behalf or on behalf of the putative classes. Nevertheless, the amount in controversy is dictated by the extent of Plaintiff's claims, not their merits. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is 'put in controversy' by the plaintiff's complaint, not what a defendant will actually owe."), quoting *Korn, supra*, 536 F. Supp. 2d at 1205.

20.  Although Defendant denies all liability, a review of Defendant's employment and payroll records shows that the alleged amount in controversy herein easily exceeds $5,000,000 in the aggregate based on the allegations contained in the Complaint. As described below, even when *excluding* several of Plaintiff's claims as well as Plaintiff's demand for injunctive relief, interest and costs, the amount in controversy in this lawsuit is at least **$12,641,155.00**.

21.  **The Putative Class**. Defendant's records indicate that during the Putative Class Period (i.e., October 30, 2019 through the present), Defendant employed approximately **936** non-exempt employees in California. These employees worked a total of approximately **65,270** workweeks and approximately 32,365 bi-weekly pay periods.

22.  During the period from three years prior to the filing of the Complaint

(i.e., April 25, 2021) through the present, Unio employed approximately **884** non-exempt employees in California who worked approximately **55,120** workweeks and approximately **27,560** bi-weekly pay periods. Of these **884** non-exempt employees, approximately **410** are former employees who were terminated or resigned during this period.

23. During the period from one year prior to the filing of the Complaint (i.e., April 25, 2023) through the present, Unio employed approximately **668** non-exempt employees in California—these employees worked a total of about **27,471** workweeks and **13,740** pay periods.

24. The vast majority of Unio's non-exempt employees in California are paid on a bi-weekly basis.

25. During the Putative Class Period, Unio's non-exempt employees in California were paid an average straight-time rate that is significantly more than the California minimum wage.

26. Because the positions and job duties vary, the schedules worked by Unio's non-exempt employees in California vary significantly from employee to employee. However, the vast majority of Unio's non-exempt employees in California are full-time employees who typically work five days per week and eight hours per day.

27. As set forth below, the amount in controversy based on the claims alleged in Plaintiff's Complaint would exceed $5,000,000.00 as follows:

28. **Plaintiff's Claim for Minimum Wages.** In her First Cause of Action, Plaintiff seeks unpaid minimum wages and liquidated damages in an amount equal to the amount of unpaid minimum wages pursuant to California Labor Code §§ 1194, 1194.2 and 1197. (Complaint at ¶¶ 30-33.) Specifically, Plaintiff alleges that she "and Class Members regularly reviewed and responded to emails and phone calls from coworkers to address employment matters while off-the-clock" and "this practice

resulted in unpaid wages for work completed when Plaintiff and Class Members were not scheduled to work." (Complaint at ¶ 23.)

29. Labor Code sections 1194 and 1197 provide that non-exempt employees be paid at least the minimum wage be paid at least the "legal minimum wage" for all hours worked, and that a failure to do so is unlawful. *See* Cal. Lab. Code §§ 1194, 1197.

30. The statute of limitations of recovery of damages for failure to pay minimum wages is three years. Cal. Civ. Proc. Code § 338(a). However, Plaintiff additionally seeks restitution of unpaid wages pursuant to California Business & Professions Code section 17200, *et seq.* (Complaint ¶¶ 74-79), which has a four-year statute of limitations. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) ("We recognize that any business act or practice that violates the Labor Code through failure to pay wages is, by definition…an unfair business practice… *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.") (Emphasis in original.) Thus, the statute of limitations for Plaintiff's claim for unpaid minimum wages is four years. *See* Cal. Civ. Proc. Code §338(a); Cal. Bus. & Prof. Code § 17207.

31. As set forth above, approximately 936 Putative Class Members worked approximately **32,365** bi-weekly pay periods during the Putative Class Period.§

32. The mean minimum legal minimum wage in California for non-exempt employees from 2019 through 2024 is **$14.25** per hour.

33. In order to provide as conservative as an estimate as possible, and based on Plaintiff's allegations in the Complaint, Defendant assumes that Putative Class Members performed, on average, one hour of off-the-clock work per bi-weekly pay period. These Putative Class Members would thus be entitled to an additional hour of compensation at an average rate of **$14.25** per hour (the mean legal minimum wage during the Putative Class Period (2019-2024)) and the amount of unpaid minimum wages put into controversy by Plaintiff's minimum wage claim is at least

**$461,201.00**: 32,265 pay periods X 1 hour of off-the-clock work per pay period X $14.25/hour (average minimum wage during 2019-2024)[1].

34. In addition to unpaid minimum wages, Plaintiff seeks "liquidated damages in an amount equal to the wages unlawfully unpaid . . ." pursuant to Labor Code section 1194.2. (Complaint ¶ 33.) California Labor Code section 1194.2 provides that claims for liquidated damages are subject to the same statute of limitations as that of the claim for underlying wages, which in this case is four years. Here, the amount of unpaid minimum wages totals at least **$461,201.00**. Accordingly, the value of Plaintiff's claim for liquidated damages is also at least **$461,201.00**. Plaintiff's claim for Minimum Wage Violations therefore puts at least **$922,402.00** in controversy.

35. **Plaintiff's Claim for Meal Period Violations**: Plaintiff's Third Cause of Action alleges that Putative Class Members were not provided with compliant, duty-free meal periods in accordance with California law, or meal period premiums in lieu thereof, in violation of Labor Code § 226.7. (Complaint ¶¶ 38-42.)

36. Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure section 338(a). *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th 1094, 1102-14 (2007). However, Plaintiff additionally seeks meal period premium pay pursuant to California Business & Professions Code sections 17200, *et seq.* (*Id.*, ¶¶ 74-79), the statute of limitations on which is four years. *Cortez*, 23 Cal.4th at 178-79. Employees that miss or are otherwise not provided with a timely, compliant, and duty-free meal period are entitled to one additional hour of pay at the regular rate of compensation for each workday that the meal period is not provided. Cal. Labor Code § 226.7(c).

---

[1] Because Putative Class Members worked far more hours during the second half of the Putative Class Period than during the first half of the class period, using $14.25 as the minimum wage undercounts the amount of unpaid minimum wages Putative Class Members allegedly suffered.

37. During the Putative Class Period, approximately **936** Putative Class Members worked approximately **32,365** bi-weekly pay periods. Assuming that Putative Class Members were not provided with one required meal period per bi-weekly pay period, the amount put in controversy by Plaintiff's Meal Period Claim is at least **$461,201.00** (32,365 pay periods X 1 missed meal period per pay period X $14.25/hour (average minimum wage during Putative Class Period)).[2]

38. **Plaintiff's Claim for Rest Period Violations**: Plaintiff's Fourth Cause of Action alleges that Putative Class Members were not provided with compliant, duty-free rest periods in accordance with California law, or rest period premiums in lieu thereof, in violation of Labor Code § 226.7. (Complaint ¶¶ 43-46.)

39. Claims for rest period violations are subject to the three-year statute of limitations in Code of Civil Procedure section 338(a). *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th 1094, 1102-14 (2007). However, Plaintiff additionally seeks rest period premium pay pursuant to California Business & Professions Code sections 17200, *et seq.* (*Id.*, ¶¶ 74-79), the statute of limitations on which is four years. *Cortez*, 23 Cal.4th at 178-79. Employees that miss or are otherwise not provided with a timely, compliant, and duty-free rest period are entitled to one additional hour of pay at the regular rate of compensation for each workday that the restl period is not provided. Cal. Labor Code § 226.7(c).

40. During the Putative Class Period, approximately **936** Putative Class Members worked approximately **32,365** bi-weekly pay periods. Assuming that Putative Class Members were not provided with one required rest period per bi-weekly pay period, the amount put in controversy by Plaintiff's Rest Period Claim is at least **$461,201.00** (32,365 pay periods X 1 missed rest period per pay period X

---

[2] Since the average hourly rate that Unio paid to its non-exempt employees in California during the Putative Class Period was significantly greater than the California minimum wage, using the average minimum wage as the regular rate of the Putative Class Members significantly understates the amount of meal period premiums to which Putative Class Members would allegedly be entitled.

$14.25/hour (average minimum wage during Putative Class Period)).[3]

41. **Plaintiff's Claim for Untimely Payment of Wages.** Plaintiff's Sixth Cause of Action seeks, *inter alia*, statutory penalties for Defendant's alleged failure to pay all wages owed each pay period in violation of Labor Code § 204. (Complaint ¶¶ 58-61.) Under Labor Code section 210, an injured employee is entitled to recover a statutory penalty of $100 for the initial violation and $200 for each subsequent violation. Cal. Labor Code § 210. The statute of limitations to seek penalties for failure to provide accurate wage statements is one year. Cal. Code Civ. Proc. § 340(a).

42. As set forth above, approximately **668** putative class members worked approximately **13,740** pay periods, during the period from one year prior to the filing of the Complaint (April 25, 2023) through the present. Because Plaintiff arguably alleges that the Putative Class Members were, as a matter of policy and practice, not compensated for all time worked or provided legally compliant meal and rest breaks, there would presumably be a violation in nearly all—if not all—pay periods worked under Plaintiff's theory of the case.

43. Accordingly, the amount put in controversy by Plaintiff's Wage Statement Claim is at least **$2,681,200.00:** ((Penalty for Initial Violations ($100.00) x 1 Pay Period Per Employee (668)) + (Penalty for Subsequent Violations ($200.00) x Remaining Pay Periods (13,740 – 668)).

44. **Plaintiff's Claim for Wage Statement Violations.** Plaintiff's Seventh Cause of Action seeks statutory penalties for Defendant's alleged failure to provide accurate wage statements in violation of Labor Code § 226. (Complaint ¶¶ 62-66.) Specifically, Plaintiff alleges that "the wage statements issued to Plaintiff and class members did not accurately state each pay period all of the information required by

---

[3] Since the average hourly rate that Unio paid to its non-exempt employees in California during the Putative Class Period was significantly greater than the California minimum wage, using the average minimum wage as the regular rate of the Putative Class Members significantly understates the amount of rest period premiums to which Putative Class Members would allegedly be entitled.

1 | Labor Code § 2262(a)(1)-(9)." (*Id.* at ¶ 64.) Plaintiff alleges that Defendant "knowingly and intentionally" committed these violations. (*Id.*) Under Labor Code section 226(e), an injured employee is entitled to recover the greater of actual damages or penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent period (up to an aggregate penalty of $4,000) for a knowing and intentional violation. Cal. Labor Code § 226(e). The statute of limitations to seek penalties for failure to provide accurate wage statements is one year. Cal. Code Civ. Proc. § 340(a).

45. As set forth above, approximately **668** putative class members worked approximately **13,740** pay periods, during period from one year prior to the filing of the Complaint (April 25, 2023) through the present. Because Plaintiff arguably alleges that the Putative Class Members were, as a matter of policy and practice, not compensated for all time worked or provided legally compliant meal and rest breaks, there would presumably be one or more violations in nearly all—if not all—wage statements provided by Defendant under Plaintiff's theory of the case. Further, Plaintiff alleges that "the wage statements issued to Plaintiff and class members did not accurately state each pay period all of the information required by Labor Code § 2262(a)(1)-(9)." (*Id.* at ¶ 64.)

46. Accordingly, the amount put in controversy by Plaintiff's Wage Statement Claim is at least **$1,340,600.00:** ((Penalty for Initial Violations ($50.00) x 1 Pay Period Per Employee (668)) + (Penalty for Subsequent Violations ($100.00) x Remaining Pay Periods (13,740 – 668)).

47. **Plaintiff's Claim for Waiting Time Penalties:** Plaintiff's Eighth Cause of Action seeks waiting time penalties pursuant to California Labor Code section 201 through 203. (Complaint ¶¶ 67-70.) Plaintiff alleges that "Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior

notice of his or her intention to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders." (*Id.* ¶ 69.) Under Section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty that is equal to their daily wage up to a maximum of thirty (30) days. Cal. Lab. Code § 203. If Plaintiff prevails on this claim on a class-wide basis, each Putative Class Member whose employment was terminated from April 25, 2021 to present would be entitled to up to 30 days' wages.

48. The statute of limitations on this claim is three years regardless of whether a claim under Business and Professions Code § 17200 is alleged. *Pineda v. Bank of America*, 50 Cal.4th 1389 (2010).

49. As set forth above, during the period from April 25, 2021 to present, Unio employed approximately **884** non-exempt employees in California, and approximately **410** of those non-exempt employees have separated from employment with Defendant. Defendant's records indicate that approximately 36 of these employees separated in 2021, approximately 131 separated in 2022, approximately 178 separated in 2023 and approximately 65 separated in 2024.

50. Assuming that Plaintiff prevails on this claim, the 36 employees who separated in 2021 will be entitled to a total of at least $120,960 in waiting time penalties (36 employees X 30 days/employee X 8 hours/day X $14.00/hour (minimum wage in 2021)), the 131 employees who separated in 2022 will be entitled to a total of at least $471,600 in waiting time penalties (131 employees X 30 days/employee X 8 hours/day X $15.00/hour (minimum wage in 2022)), the 178 employees who separated in 2023 will be entitled to a total of at least $662,160 in waiting time penalties (178 employees X 30 days/employee X 8 hours/day X $15.50/hour (minimum wage in 2023)), and the 65 employees who separated in 2024

will be entitled to a total of at least $249,600 in waiting time penalties (65 employees X 30 days/employee X 8 hours/day X $16.00/hour (minimum wage in 2024)).[4]

51. Accordingly, the amount put in controversy by Plaintiff's Waiting Time Penalty Claim is at least **$1,504,320.00.**

52. For all **107** separated employees who were employed by BMI between November 30, 2020 and January 5, 2024, the total waiting time penalties amount in controversy amounts to **$841,688.89** ($828,796.50 + $12,892.39).

53. **Plaintiff's Other Claims.** Plaintiff also asserts claims for Unpaid Overtime Wages, Unpaid Sick Leave Wages and Unreimbursed Business Expenses. It is not necessary to detail the amounts put into controversy by these claims to establish that the amount put into controversy by Plaintiff's Complaint exceeds the CAFA jurisdictional threshold. To the extent that Plaintiff challenges this Court's jurisdiction, Defendant reserves the right to detail the amounts put into controversy by these claims.

54. **Attorneys' Fees.** Plaintiff additionally seeks attorneys' fees to the extent recoverable by statute. When a party seeks to recover attorneys' fees provided for by statute, these fees—including future fees—are included in the amount in controversy to reach CAFA's $5,000,000 minimum. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 *7 (9th Cir. Aug. 8, 2018) ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy [in a removal under CAFA]"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

55. It is well established in the Ninth Circuit that the benchmark for setting

---

[4] Since the average hourly rate that Unio paid to its non-exempt employees in California during the relevant period was significantly greater than the California minimum wage, using the minimum wage as the regular rate of the Putative Class Members significantly understates the amount of waiting time penalties to which Putative Class Members would allegedly be entitled.

attorneys' fees in the class action context is at least 25% of the common fund. *See*, *e.g.*, *Vizcaino v. Mircrosoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001).

56. Accordingly, the amount of attorneys' fees in controversy is at least **$1,842,731:** 25 percent X ($922,402 (Unpaid Minimum Wages & Liquidated Damages) + $461,201 (Meal Period Premium Violations) + $461,201 (Rest Break Premium Violations) + $2,681,200 (Untimely Wage Payment Penalties) + $1,340,600 (Wage Statement Penalties) + $1,504,320 (Waiting Time Penalties).

57. **Total Amount in Controversy.** Thus, the amount in controversy in this lawsuit totals, *at a bare minimum* approximately **$9,213,655:** $922,402 (Unpaid Minimum Wages & Liquidated Damages) + $461,201 (Meal Period Premium Violations) + $461,201 (Rest Break Premium Violations) + $2,681,200 (Untimely Wage Payment Penalties) + $1,340,600 (Wage Statement Penalties) + $1,504,320 (Waiting Time Penalties) + $1,842,731 (Attorneys' Fees).

58. §For all the foregoing reasons, Defendant removes the State Court Action to this Court under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

DATED: May 31, 2024        **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

By: s/ Seth M. Goldstein
Seth M. Goldstein
Attorneys for Defendant
UNIO HEALTH CARE PARTNERS, LLC
E-mail: sgoldstein@constangy.com

# EXHIBIT TABLE OF CONTENTS

EMILIE HANNE V. UNIO HEALTH CARE PARTNERS, LLC

and DOES 1 through 50, inclusive

[Removed from San Diego County Superior Court,

Case No. 37-2024-00019901-CU-OE-CTL]

| Exhibit | Starting Page | Document |
|---|---|---|
| A | 19 | Class Action Complaint |
| B | 36 | Civil Case Cover Sheet. |
| C | 39 | Summons |
| D | 41 | Notice of Case Assignment |
| E | 44 | Proof of Service of 30-day Summons & Complaint |
| F | 47 | San Diego County Superior Court's electronic docket |